**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

JENNA B.,[1]              :   Case No. 3:21-cv-00176

           Plaintiff,      :

                          :   Magistrate Judge Caroline H. Gentry

vs.                         :   (by full consent of the parties)

                          :

COMMISSIONER OF THE SOCIAL   :
SECURITY ADMINISTRATION,      :

                          :

           Defendant.      :

---

## DECISION AND ORDER

---

## I.     INTRODUCTION

Plaintiff filed an application for Child's Insurance Benefits in October 2018. Plaintiff's claim was denied initially and upon reconsideration. She subsequently filed an application for Supplemental Security Income in September 2019, and this claim was escalated to the hearing level. After a hearing at Plaintiff's request, the Administrative Law Judge (ALJ) concluded that Plaintiff was not eligible for benefits because she was not under a "disability" as defined in the Social Security Act. The Appeals Council denied Plaintiff's request for review. Plaintiff subsequently filed this action.

Plaintiff seeks an order remanding this matter to the Commissioner for the award of benefits or, in the alternative, for further proceedings. The Commissioner asks the

---

[1] *See* S.D. Ohio General Order 22-01 ("The Committee on Court Administration and Case Management of the Judicial Conference of the United States has recommended that due to significant privacy concerns in social security cases federal courts should refer to claimants only by their first names and last initials.").

Court to affirm the non-disability decision. This matter is before the Court on Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 14), Plaintiff's Reply (Doc. 15), and the administrative record (Doc. 8).

## II.    BACKGROUND

Plaintiff asserts that she has been under a disability since February 1, 2018.[2] At that time, she had not yet attained the age of twenty-two years old.[3] Accordingly, Plaintiff was considered a "younger person" under Social Security Regulations. *See* 20 C.F.R. §§ 404.1563(c), 416.963(c).[4] Plaintiff has a "high school education and above." *See* 20 C.F.R. § 404.1564(b)(4).

The evidence in the administrative record is summarized in the ALJ's decision (Doc. 8-2, PageID 43-60), Plaintiff's Statement of Errors (Doc. 11), the Commissioner's Memorandum in Opposition (Doc. 14), and Plaintiff's Reply (Doc. 15). Rather than repeat these summaries, the Court will discuss the pertinent evidence in its analysis below.

---

[2] The ALJ's decision references an alleged onset date of February 1, 2018 (Doc. 8-2, PageID 43). However, Plaintiff alleged disability beginning September 15, 2018, in her Child's Insurance Benefits application (Doc. 8-5, PageID 172), and her Supplemental Security Income application references an alleged onset date of October 30, 2018. (Doc. 8-5, PageID 186.) Plaintiff's attorney did not contest the alleged onset date that is listed in the ALJ's decision.

[3] Social Security regulations provide for the provide for the payment of disabled child's insurance benefits if the claimant is eighteen years old or older and has a disability that began before attaining age twenty-two. 20 C.F.R. § 404.350(a)(5).

[4] The remaining citations will identify only the pertinent Disability Insurance Benefits Regulations, as they are similar in all relevant respects to the corresponding Supplemental Security Income Regulations.

## III. STANDARD OF REVIEW

The Social Security Administration provides Child's Insurance Benefits and Supplemental Security Income to individuals who are under a "disability," among other eligibility requirements. *Bowen v. City of New York,* 476 U.S. 467, 470 (1986); *see* 42 U.S.C. §§ 402, 423(a)(1), 1382(a). The term "disability" means "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a).

This Court's review of an ALJ's unfavorable decision is limited to two inquiries: "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see* 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive."). "Unless the ALJ has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence," this Court must affirm the ALJ's decision. *Emard v. Comm'r of Soc. Sec.*, 953 F.3d 844, 849 (6th Cir. 2020). Thus, the Court "may not try the case *de novo*, nor resolve conflicts in evidence, nor decide questions of credibility." *Id.*

"Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citation omitted). This limited standard of review does not permit the Court to weigh the

evidence and decide whether the preponderance of the evidence supports a different conclusion. Instead, the Court is confined to determining whether the ALJ's decision is supported by substantial evidence, which "means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). This standard "presupposes that there is a zone of choice within which the decisionmakers can go either way, without interference by the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986). Thus, the Court may be required to affirm the ALJ's decision even if substantial evidence in the record supports the opposite conclusion. *Key v. Callahan,* 109 F.3d 270, 273 (6th Cir.1997).

The other line of judicial inquiry—reviewing the correctness of the ALJ's legal criteria—may result in reversal even when the record contains substantial evidence supporting the ALJ's factual findings. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009). "[E]ven if supported by substantial evidence, 'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Id.* (citations omitted). Such an error of law will require reversal even if "the outcome on remand is unlikely to be different." *Cardew v. Comm'r of Soc. Sec.*, 896 F.3d 742, 746 (6th Cir. 2018) (internal quotations and citations omitted).

## IV.     FACTS

### A.     The ALJ's Findings of Fact

The ALJ was tasked with evaluating the evidence related to Plaintiff's application for benefits. In doing so, the ALJ considered each of the five sequential steps set forth in

4

the Social Security Regulations. *See* 20 C.F.R. § 404.1520.  The ALJ made the following

findings of fact:

Step 1:      Born September 15, 2000, Plaintiff had not attained age 22 as of
             February 1, 2008, the alleged onset date.

             Plaintiff has not engaged in substantial gainful activity since the
             alleged onset date.

Step 2:      She has the severe impairments of major depressive disorder,
             generalized anxiety disorder, attention-deficit hyperactivity disorder
             (ADHD), and post-traumatic stress disorder (PTSD).

Step 3:      She does not have an impairment or combination of impairments
             that meets or equals the severity of one in the Commissioner's
             Listing of Impairments, 20 C.F.R. Part 404, Subpart P, Appendix 1.

Step 4:      Her residual functional capacity (RFC), or the most she can do
             despite her impairments, *see Howard v. Comm'r of Soc. Sec.*, 276
             F.3d 235, 239 (6th Cir. 2002), consists of a full range of work at all
             exertional levels, but with the following non-exertional limitations:
             "She can perform simple, routine tasks, in work that has only
             occasional changes in the work setting."

             She has no past relevant work.

Step 5:      Considering Plaintiff's age, education, work experience, and residual
             functional capacity, there are jobs that exist in significant numbers in
             the national economy that she can perform.

(Doc. 8-2, PageID 46-60.) These findings led the ALJ to conclude that Plaintiff does not

meet the definition of disability and so is not entitled to benefits. (*Id.* at PageID 60.)

**B.      Joyce Parson, M.S.W./L.I.S.W.-S.**

Ms. Parson, a licensed independent social worker, submitted narrative reports in

June 2019, February 2020, and November 2020. (Doc. 8-7, PageID 409-14, 419-20; Doc.

8-8, PageID 581-84.) Ms. Parson indicated that she began seeing Plaintiff on a weekly

5

basis in June 2014, and she continued services via telehealth from January 2019 to December 2019. (Doc. 8-7, PageID 410, 419-20; Doc. 8-7, PageID 581.) Ms. Parson said that she subsequently terminated services when Plaintiff became "suicidal again," because she believed that "actively suicidal clients should not be seen via telehealth." (Doc. 8-8, PageID 581.)

In the June 2019 report, Ms. Parson detailed the nature and symptoms of Plaintiff's conditions, which she listed as major depressive disorder, PTSD, ADHD, and generalized anxiety disorder. (*Id.* at PageID 413.) She explained that Plaintiff had struggled with depression since 2013 or 2014, and was taking medication but continued to experience mild to moderate symptoms. (*Id.*) She noted that Plaintiff had difficulty with "serious sleep problems, memory, motivation and decision making." (*Id.*) She attributed Plaintiff's PTSD to her upbringing, which included verbal and emotional abuse and a lack of other supports. (*Id.*) According to Ms. Parson, Plaintiff had a "hair trigger temper" that resulted in verbal outbursts. (*Id.*) As for ADHD, Ms. Parson reported:

> [Plaintiff] has difficulty paying attention, loses focus easily, [and] jumps from subject to subject in conversation. She is extremely impulsive, makes poor decisions, [and] struggles with motivation and procrastination (partially due to fears, but largely due to ADHD). [Plaintiff] struggles with poor self-esteem and low self-confidence. Memory issues are often a symptom of this condition as well.

(*Id.*) With regard to Plaintiff's anxiety, Ms. Parson reported that Plaintiff had multiple fears and phobias," including a fear of trying new things. (*Id.*) Ms. Parson noted that Plaintiff had made some improvement with therapy, but stated that "with a complex mental health history and multiple fears and anxieties, it will take years to resolve some

6

of her challenges." (*Id.* at PageID 414.) Ms. Parson noted that Plaintiff sometimes forgot appointments and struggled with "remembering and complying with behavioral goals." (*Id.*) Significantly, Ms. Parson explained that this behavior was "consistent with her mental health diagnoses." (*Id.*)

Ms. Parson opined that Plaintiff's conditions "make it highly unlikely that she could successfully work." (Doc. 8-7, PageID 414.) She opined and explained:

> [Plaintiff] would have difficulty learning a new job because of ADHD and her many fears. She would have problems remembering details of the job and even her schedule. She would have difficulty being timely for a job due to her significant sleep problems. Perhaps the greatest challenge would be in managing her response to instruction and correction. Her quick temper and verbal outbursts would likely result in losing any employment she might gain. [Plaintiff] is emotionally very immature due to her years of verbal and emotional abuse, her self esteem is so low that she rarely makes important phone calls or deals with the realities of day to day life. Her depression and motivation issues would impede her more. This therapist is hopeful that one day she can live a meaningful and productive life, but she has a long period of healing, recovery and maturing ahead of her. This therapist believes it would be difficult for her to find employment and nearly impossible for her to sustain it at this time.

(*Id.*)

In her February 2020 report, Ms. Parson again summarized Plaintiff's conditions and treatment history. (Doc. 8-7, PageID 419.) Consistent with the June 2019 report, Ms. Parson attributed Plaintiff's PTSD to her upbringing, which Ms. Parson described as an "abusive and explosive home life." (*Id.* at PageID 419-20). She noted that Plaintiff's parents "did not keep her on medications consistently and refused medication for ADHD." (*Id.* at PageID 419.) Ms. Parson stated that Plaintiff's depression was not yet stable on medication. (*Id.* at PageID 420.) She noted that Plaintiff was "emotionally

immature, made impulsive decisions, and used poor judgment in life." (*Id.* at PageID 419.) Ms. Parson again noted Plaintiff's "hair trigger temper," which she opined "impair[ed] her ability to take direction from others and to work compatibly with others." (*Id.*) Ms. Parson concluded: "It will be sometime before [Plaintiff] is stable enough for a work environment. She has many wounds from which to heal and numerous obstacles to overcome. I do believe that after some months of intensive treatment and the appropriate medications, that she will eventually be able to go for advanced schooling or have gainful employment." (*Id.* at PageID 420.)

In her final report from November 2020, Ms. Parson again summarized Plaintiff's impairments and treatment history. (Doc. 8-8, PageID 581-82.) Ms. Parson noted she no longer had access to records from Clearing Paths Therapeutic Services, where she first treated Plaintiff. (*Id.* at PageID 582.) Ms. Parson reported observing the following signs and symptoms: poor memory; appetite disturbance with weight change; sleep disturbance; mood disturbance; emotional lability; recurrent panic attacks; anhedonia or pervasive loss of interests; paranoia or inappropriate suspiciousness; feelings of guilt/worthlessness; difficulty thinking or concentrating; suicidal ideation or attempts; social withdrawal or isolation; blunt, flat, or inappropriate affect; illogical thinking; decreased energy; obsessions or compulsions; intrusive recollections of a traumatic experience; persistent irrational fears; generalized persistent anxiety; hostility or irritability; and pathological dependence or passivity. (*Id.* at PageID 581.)

Ms. Parson stated that Plaintiff "did not make substantial progress" in treatment and often forgot to practice or became confused about what she learned during therapy

8

sessions. (*Id.* at PageID 582.) She said that Plaintiff experienced "frequent memory problems and at times irrational thinking," which caused her to miss class, work, or other activities due to panic attacks. (*Id.*) Ms. Parson reported that Plaintiff "struggle[d] with any form of criticism or correction" and could "become aggressive, both verbally and potentially physically." (*Id.*) Ms. Parson opined that this behavior created problems with relationships, "including with supervisors and coworkers." (*Id.*) She noted that Plaintiff had tried to work at a job but that "the stress and the frequent triggers from her trauma prevented her from maintaining it." (*Id.* at PageID 583.) Ms. Parson opined that Plaintiff experienced marked restrictions in activities of daily living and was extremely limited in maintaining social functioning and maintaining concentration, persistence, and pace. (*Id.*) She also opined to marked episodes of deterioration or decompensation. (*Id.*)

### C.    The ALJ's Analysis of Ms. Parson's Reports

The ALJ summarized these reports in the medical evidence discussion section of the RFC analysis. (Doc. 8-2, PageID 52, 54, 56.) In the opinion analysis section, the ALJ concluded that Ms. Parson's opinions in the February 2020 report and the November 2020 report were unpersuasive. (*Id.* at PageID 58.) The ALJ explained:

> The undersigned finds that while these opinions are supported by explanation, they are inconsistent with the overall record; and therefore are unpersuasive. Specifically, the objective evidence, clinical findings, alleged symptomology and activities of daily living are inconsistent with these opinions. Moreover, as to the issue of whether [Plaintiff] can engage in gainful employment, this is an issue reserved for the Social Security Commissioner.

(*Id.*) The ALJ did not evaluate the persuasiveness of Ms. Parson's June 2019 report. Instead, he cited this report only when addressing Ms. Parson's "statements on issues reserved to the Commissioner." (Doc. 8-2, PageID 58, referencing Doc. 8-7, PageID 414, 420; Doc. 8-8, PageID 84.)

## V.     LAW AND ANALYSIS

Plaintiff asserts that the ALJ "reversibly erred in evaluating [Plaintiff's] RFC and the mental health source opinions." (Doc. 11, PageID 600.) Plaintiff specifically challenges the ALJ's evaluation of Ms. Parson's opinions and the State agency psychological consultants' findings. (*Id.*) Finding error in the ALJ's analysis of Ms. Parson's opinions, the Court does not address Plaintiff's other alleged errors and, instead, instructs the ALJ to address all of them on remand.

### A.     Evaluation of Medical Opinions

Social Security regulations require ALJs to adhere to certain standards when evaluating medical opinions. ALJs must analyze the persuasiveness of "***all*** of the medical opinions" in the record. 20 C.F.R. § 404.1520c (emphasis added).  A "medical opinion" is a "statement from a medical source about what [an individual] can still do despite [her] impairment(s)" and whether the individual has one or more impairment-related limitations or restrictions. 20 C.F.R. § 404.1513(a)(2). By contrast, a statement from a medical source about an issue reserved to the Commissioner—such as whether an individual is disabled—need not be addressed by the ALJ. 20 C.F.R. § 404.1520b(c)(3).

Because Plaintiff filed her claims in October 2018 and September 2019, the new regulations for evaluating medical opinion evidence applied. Under these regulations, the

ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s) . . . ." 20 C.F.R. § 404.1520c(a). Instead, the ALJ must evaluate the persuasiveness of each medical opinion and prior administrative medical finding by considering the following factors: (1) supportability; (2) consistency; (3) relationship with the plaintiff; (4) specialization; and (5) any other factor "that tend[s] to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Significantly, because the first two factors—supportability and consistency—are the "most important" ones, the ALJ "*will* explain" how he or she considered them. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).[5] As to the first factor (supportability), "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). As to the second factor (consistency), "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) . . . will be." 20 C.F.R. § 404.1520c(c)(2).

### B.    Harmless Error

Courts generally will excuse an ALJ's procedural violation as harmless error unless it prejudices the claimant on the merits or deprives him of substantial rights. *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2007) (citing *Connor v. U.S.*

---

[5] By contrast, the ALJ "may, but [is] not required to," explain the consideration given to the remaining factors. 20 C.F.R. § 404.1520c(b)(2).

*Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)). A court's ability to excuse a procedural error depends, however, upon the nature of the regulation and the importance of its procedural safeguard. *Id*. For example, an ALJ's failure to comply with the treating physician rule will rarely be excused. *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541 (6th Cir. 2004). Such an error may only be excused as harmless if the medical opinion "is so patently deficient that the Commissioner could not possibly credit it," if the violation is irrelevant because the Commissioner "adopts the opinion … or makes findings consistent with [it]," or if the goal of the procedural safeguard is otherwise met. *Id*. at 547.

The Sixth Circuit has not addressed the circumstances under which an ALJ's failure to explain his consideration of the supportability and consistency factors, as required by 20 C.F.R. § 404.1520c(b)(2), can be excused as harmless error. However, several district courts in the Sixth Circuit have held that the harmless error test articulated in *Wilson*, which applies to violations of the treating physician rule, should also apply to violations of Section 404.1520c(b)(2). *See Musolff v. Comm'r of Soc. Sec.*, 2022 U.S. Dist. LEXIS 88910, *39 (N.D. Ohio Apr. 27, 2022) (citing cases). This Court agrees that the harmless error test articulated in *Wilson* should apply to violations of 20 C.F.R. § 404.1520c(b)(2).

The mandatory articulation requirement in Section 404.1520c(b)(2) is similar to the "good reasons" requirement of the treating physician rule. Under that rule, an ALJ who declines to give controlling weight to the opinion of a treating physician must articulate "specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record." SSR 96-2p, 1996 WL 374188, *5 (1996).

The ALJ's stated reasons "must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Id*. The purposes of the good reasons requirement are twofold: to permit meaningful judicial review of the ALJ's application of the treating physician rule, and to ensure that claimants understand why the ALJ disagreed with the opinion of their own physician, who considered them disabled. *Wilson*, 378 F.3d at 544-45.

The regulation at issue here is part of the regulatory framework that replaced the treating physician rule and its concomitant good reasons requirement. Under the new framework, ALJs do not give controlling weight to a treating physician's opinion. Instead, ALJs must evaluate the persuasiveness of each medical opinion by using a five-factor test. 20 C.F.R. § 404.1520c(c). ALJs are not required to explain their consideration of all five factors. 20 C.F.R. §§ 404.1520c(b)(2). They are, however, required to explain their evaluation of the supportability and consistency factors. *Id*. The regulation therefore imposes a burden of explanation, or mandatory articulation, upon ALJs.

The mandatory articulation requirement in Section 404.1520c(b)(2) serves the same purposes as the good reasons requirement of the treating physician rule. By requiring ALJs to articulate their analysis of the most important factors to consider when determining the persuasiveness of medical opinions (i.e., supportability and consistency), the requirement permits meaningful judicial review. It also ensures that claimants will receive an explanation of why the ALJ found each medical opinion, including those of their treating physician, to be persuasive, partially persuasive, or not persuasive.

In sum, the function and purposes of the mandatory articulation rule in Section 404.1520c(b)(2) are similar to those of the good reasons requirement at issue in *Wilson*. Therefore, the *Wilson* harmless error test should also apply to procedural violations of Section 404.1520c(b)(2).

This conclusion is consistent with Sixth Circuit's analysis in *Rabbers*. In that case, the Sixth Circuit reasoned that the *Wilson* test should not extend to a regulation that is a mere "adjudicatory tool" designed to aid the SSA. *Rabbers*, 582 F.3d at 656. Here, the mandatory articulation requirement is not an adjudicatory tool. Instead, it imposes a burden of explanation that serves an "independent and important function" by enabling judicial review and allowing claimants to understand the reasons for the decision. *Id*. The Commissioner's use of mandatory language (the ALJ "***will*** explain") confirms the importance of this procedural safeguard. 20 C.F.R. § 404.1520c(b)(2) (emphasis added).

The relative ease or difficulty of conducting a harmless error analysis is also a relevant factor to consider. *Rabbers*, 582 F.3d at 657. An ALJ's failure to comply with Section 404.1520c(b)(2) will make it difficult for a court to determine whether the error is harmless. *See, e.g., Terhune v. Kijakazi*, Case No. 3:21-cv-37, 2022 WL 2910002, *5 (E.D. Ky. July 22, 2022). This difficulty provides another reason for concluding that the *Wilson* test should apply to violations of Section 404.1520c(b)(2).

For these reasons, this Court concludes that the *Wilson* harmless error test applies to violations of 20 C.F.R. § 404.1520c(b)(2). Accordingly, an ALJ's failure to explain his consideration of the supportability and consistency factors when determining the persuasiveness of a medical opinion can only be excused as harmless error if: (1) the

14

medical opinion is patently deficient, (2) the ALJ adopted the medical opinion or made findings consistent with the opinion, or (3) the goal of the regulation was otherwise met. *Wilson*, 378 F.3d at 547. Such an error cannot be excused as harmless for other reasons, including where substantial evidence in the record may support the ALJ's conclusion regarding the persuasiveness (or lack thereof) of the medical opinion. *Id*. at 546.

### C. Evaluating Symptom Severity

When a claimant alleges symptoms of disabling severity, the Social Security Administration uses a two-step process for evaluating an individual's symptoms. SSR 16-3p, 2017 WL 5180304, *3 (revised and republished Oct. 25, 2017).

First, the ALJ must "determine whether the individual has a medically determinable impairment that could reasonably be expected to produce the individual's alleged symptoms." SSR 16-3p at *3. The ALJ must make this determination based upon objective medical evidence in the form of medical signs or laboratory findings. *Id*. Medical signs are "anatomical, physiological, or psychological abnormalities established by medically acceptable clinical diagnostic techniques that can be observed apart from an individual's symptoms." *Id*. The ALJ will not, however, consider whether the objective medical evidence supports the alleged severity of the individual's symptoms. *Id*.

Second, the ALJ must "evaluate the intensity and persistence of an individual's symptoms … and determine the extent to which an individual's symptoms limit his or her ability to perform work-related activities." SSR 16-3p at *9. The Social Security Administration "recognize[s] that some individuals may experience symptoms differently and may be limited by symptoms to a greater or lesser extent than other individuals with

15

the same medical impairments, the same objective medical evidence, and the same non-medical evidence." *Id*. The ALJ must therefore examine "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id*.

When evaluating the intensity, persistence and limiting effects of the claimant's alleged symptoms, the ALJ must consider the following factors:

1. Daily activities;

2. The location, duration, frequency, and intensity of pain or other symptoms;

3. Factors that precipitate and aggravate the symptoms;

4. The type, dosage, effectiveness, and side effects of any medication an individual takes or has taken to alleviate pain or other symptoms;

5. Treatment, other than medication, an individual receives or has received for relief of pain or other symptoms;

6. Any measures other than treatment an individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

7. Any other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms.

SSR 16-3p at *7-8; *cf.* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). The ALJ need only discuss those factors that are pertinent based upon the evidence in the record. *Id*. The ALJ's discussion of the applicable factors "must contain specific reasons for the weight given to the individual's symptoms, be consistent with and supported by the evidence,

16

and be clearly articulated so the individual and any subsequent reviewer can assess how the adjudicator evaluated the individual's symptoms." *Id.* at *10.

The ALJ must determine whether an individual's symptoms and accompanying limitations are consistent with the evidence in the record. SSR 16-3p at *8. For example, the ALJ will consider an individual's statements, keeping in mind that those statements may be inconsistent because "[s]ymptoms may vary in their intensity, persistence, and functional effects, or may worsen or improve with time." *Id*. at *8-9.

The ALJ will also consider whether the claimant sought medical treatment and followed treatment that was prescribed. SSR 16-3p at *9. Attempts to obtain treatment may show that symptoms are intense and persistent; conversely, a lack of such efforts may show that an individual's symptoms are not intense or persistent. *Id*. However, the ALJ "will not find an individual's symptoms inconsistent … on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints." *Id*. The ALJ must consider these reasons "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec*., 656 F. App'x 113, 119 (6th Cir. 2016).

The SSR lists several examples of why individuals may not seek or follow treatment, including side effects from medications, an inability to afford treatment, and an inability to understand the need for treatment due to a mental impairment. *Id*. at *9-10. The ALJ may need to contact the claimant to ascertain the reason(s) for the lack of treatment. *Id*. at *9. The ALJ "***will*** explain how [he or she] considered the individual's reasons" in the evaluation of the individual's symptoms. *Id.* at *10 (emphasis added).

17

### D.    The ALJ Reversibly Erred When Analyzing Ms. Parson's Opinions

The Court concludes that the ALJ erred in his analysis of Ms. Parson's opinions

and that these errors cannot be excused as harmless. Therefore, the Court reverses and

remands the ALJ's decision.

Before reaching the merits, the Court will address Defendant's argument that the

ALJ did not need to evaluate Ms. Parson's opinions:

> Plaintiff's repeated references to social worker Parson's assessments as
> "opinions" is incorrect. Under the regulations, opinions may only be issued
> by acceptable medical sources, which does not include social workers. 20
> C.F.R. § 416.902(a). Accordingly, the ALJ was under no obligation to
> evaluate social worker Parson's assessments as if they were medical
> opinions under the regulations. See 20 C.F.R. § 416.920c (explaining an
> ALJ's obligation to evaluate medical opinions).

(Doc. 14, PageID 627.)

This argument is not well-taken. Although Ms. Parson, a licensed independent

social worker, is not an "acceptable medical source," 20 C.F.R. § 404.1502(a), she is a

"medical source" that can render a medical opinion under the new regulations. 20 C.F.R.

§§ 404.1502(d), 404.1513(a)(2); *Stacie B. v. Comm'r of Soc. Sec.*, No. 2:21-cv-4650,

2022 WL 1793149, at *4-5 (S.D. Ohio, June 2, 2022) (Jolson, M.J.) (holding that the ALJ

erred by failing to consider the medical opinions of a licensed social worker), report and

recommendation adopted, 2022 WL 2237057 (S.D. Ohio, June 22, 2022) (Graham, D.J.)

(citing 20 C.F.R. § 416.920c); *see also Morris v. Saul*, No. 1:19-cv-01588, 2021 WL

3889555, at *6 (M.D. Penn., Jan. 4, 2021) ("While licensed clinical social workers and

clinical mental health counselors are not 'acceptable medical sources,' under the new

applicable regulations, they are 'medical sources' who can render 'medical opinions' for consideration of a claimant's disability"). The ALJ was therefore required to evaluate the persuasiveness of Ms. Parson's opinions, and to articulate his analysis of the consistency and supportability factors. 20 C.F.R. § 404.1520c(b)(2), (c).

> **1.** **The ALJ erred by failing to evaluate the persuasiveness of Ms. Parson's June 2019 opinions and the error was not harmless.**

As noted above, the ALJ did not evaluate the persuasiveness of Ms. Parson's June 2019 opinions. Although the ALJ was permitted to disregard Ms. Parson's statements on issues reserved to the Commissioner, *see* 20 C.F.R. § 404.1520b(c), he was required to address Ms. Parson's other opinions. For example, Ms. Parson opined that Plaintiff would have difficulty learning a new job and would have problems with "remembering details of the job and even her schedule." (Doc. 8-7, PageID 414.) She also opined that Plaintiff would "have difficulty being timely for a job" and that she would have challenges with "managing her response to instruction and correction." (*Id.*) The ALJ failed to address the supportability, consistency, or persuasiveness of these opinions, and therefore did not comply with 20 C.F.R. § 404.1520c(b)(2).

Next, the Court considers whether the ALJ's errors can be excused as harmless. The Court finds that Ms. Parson's opinions were not patently deficient and, further, that the ALJ did not adopt her opinions or make findings consistent with them. *Wilson*, 378 F.3d at 547. The remaining question is whether the goals of Section 404.1520c(b)(2) were met by the ALJ's decision. *Id.* In other words, the Court must determine whether the ALJ's explanation is sufficient to permit meaningful judicial review and to enable the

Plaintiff to understand why the ALJ concluded that Ms. Parson's opinions were not persuasive.

The Court concludes that the ALJ's decision does not meet the goals of Section 404.1520c(b)(2). The ALJ did not consider whether Ms. Parson's opinions were supported by her own explanations and findings or whether they were consistent with evidence from other medical sources and nonmedical sources. This error precludes meaningful judicial review and prevents Plaintiff from understanding why other information consistent with Ms. Parson's opinions did not lead the ALJ to find those opinions persuasive.

Accordingly, the Court concludes that the ALJ's error in failing to comply with the mandatory articulation requirement in 20 C.F.R. § 404.1520c(c) cannot be excused as harmless. The Commissioner's decision must therefore be reversed and remanded. *Cf. Andrew M. v. Comm'r of Soc. Sec.*, Case No. 1:20-cv-906, 2022 U.S. Dist. LEXIS 40323, *17-18 (S.D. Ohio Mar. 8, 2022) (Bowman, M.J.) (failure to comply with the mandatory articulation requirement in Section 404.1520c(b)(2) was not harmless where evidence in the record could have supported the rejected medical opinions); *Miles v. Comm'r of Soc. Sec.*, Case No. 3:20-cv-410, 2021 U.S. Dist. LEXIS 202840, *12 (S.D. Ohio Oct. 21, 2021) (Silvain, M.J.) (violation of the mandatory requirement in Section 404.1520c(b)(2) required reversal and "the Commissioner's *post hoc* rationalization of how [the] ALJ could have applied the factors … does not cure this deficiency").

##### 2. *The ALJ's findings regarding the consistency of Ms. Parson's February 2020 and November 2020 opinions are not supported by substantial evidence.*

The ALJ also erred because his findings regarding the consistency of Ms. Parson's February 2020 and November 2020 opinions are not supported by substantial evidence.

The ALJ explained that Ms. Parson's February 2020 and November 2020 opinions were not persuasive because although they were "supported by explanation," they were "inconsistent with the overall record." (Doc. 8-2, PageID 58.) The ALJ stated: "Specifically, the objective evidence, clinical findings, alleged symptomology and activities of daily living are inconsistent with these opinions." (Doc. 8-2, PageID 58.) The ALJ did not cite any evidence in support of these factual findings. (*Id.*)

The ALJ's findings regarding the consistency factor are not supported by substantial evidence. Ms. Parson provided extensive summaries of her treatment history with Plaintiff and provided detailed reasons—based on Plaintiff's history, presentations, and mental status examinations—for all of her opinions. (*See* Doc. 8-7, PageID 413-14, 419-20; Doc. 8-8, PageID 581-84.) The ALJ did not explain what evidence in the record was inconsistent with the evidence relied upon by Ms. Parson. (Doc. 8-2, PageID 58.)

The ALJ's discussion of the medical records also failed to support his findings regarding the consistency factor. (Doc. 8-2, PageID 50-56.) The ALJ summarized the details of Plaintiff's office visits, including Plaintiff's complaints and the objective findings, and concluded that "the objective evidence does not support the extent of the alleged symptoms and limitations." (Doc. 8-2, PageID 50-56.) Although the ALJ provided two justifications for this finding, neither is supported by substantial evidence.

21

The ALJ first found that "[Plaintiff] mentions panic attacks and crying spells in her testimony, but these are not prominent in the treatment notes." (*Id.*) In fact, however, Ms. Parson reported that Plaintiff experienced "recurrent" panic attacks. (Doc. 8-8, PageID 494, 581.) Ms. Parson explained that Plaintiff "***often*** missed class, work or other activities due to panic attacks. She left one job because she had a panic attack and was embarrassed." (*Id.* at PageID 582 (emphasis added).) Therefore, this finding is not supported by substantial evidence.

Next, the ALJ reasoned that "the record revealed a history of medication noncompliance and when compliant the symptoms improved." (Doc. 8-2, PageID 56.) In reaching this conclusion, the ALJ did not consider ***why*** Plaintiff's treatment history is inconsistent with her complaints, as required by the applicable rule:

> [I]f the frequency or extent of the treatment sought by an individual is not comparable with the degree of the individual's subjective complaints, or if the individual fails to follow prescribed treatment that might improve symptoms, we may find the alleged intensity and persistence of an individual's symptoms are inconsistent with the overall evidence of record. ***We will not find an individual's symptoms inconsistent with the evidence in the record on this basis without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints.*** We may need to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask why he or she has not complied with or sought treatment in a manner consistent with his or her complaints. . . . ***We will explain how we considered the individual's reasons in our evaluation of the individual's symptoms.***

SSR 16-3p, 2017 WL 5180304, *9-10 (revised and republished Oct. 25, 2017) (emphasis added). The Sixth Circuit has confirmed that SSR 16-3p requires an ALJ to consider possible reasons why a claimant failed to seek medical treatment consistent with the

degree of his or her complaints "before drawing an adverse inference from the claimant's lack of medical treatment." *Dooley v. Comm'r of Soc. Sec.*, 656 F. App'x 113, 119 (6th Cir. 2016). Notably, an individual's inability to understand the need for consistent treatment and an individual's lack of awareness that treatment is needed[6] are two possible reasons an ALJ should consider when evaluating treatment history. SSR 16-3p at *10.

The ALJ failed to comply with SSR 16-3p because he did not consider possible reasons that Plaintiff failed to comply with or seek treatment consistent with her degree of complaints. Specifically, the ALJ did not consider any explanations for Plaintiff's noncompliance with medication. The ALJ cited a December 2018 psychiatry progress note that documents Plaintiff's admission to Dr. Chung that she had not been taking her medications regularly. (Doc. 8-2, PageID 51.) But the ALJ did not consider Dr. Chung's note that he "[d]iscussed strategies to prevent her from forgetting." (Doc. 8-7, PageID 371.) Dr. Chung's statement implies that Plaintiff had not been taking her medications regularly because of forgetfulness. Consistent with this implication, Ms. Parson reported that Plaintiff often experienced memory issues due to ADHD and that she struggled with "remembering and complying with behavioral goals." (Doc. 8-7, PageID 413-14.) Ms. Parson explained that Plaintiff's memory and compliance issues were "consistent with her mental health diagnoses." (*Id.* at PageID 414.) Similarly, when Plaintiff told Dr. Chung in February 2019 that she had been off Adderall for a few weeks, Plaintiff said she lost the medication. (*Id.* at PageID 384.)

---

[6] SSR 16-3p specifically states that a mental impairment that affects judgment, reality testing, or orientation may prevent an individual from being aware that she has a disorder that requires treatment. 2017 WL 5180304 at *10.

23

Further, during an emergency room visit for depression and suicidal ideation in December 2019, Plaintiff said she had stopped taking her Zoloft. (Doc. 8-7, PageID 454.) But Ms. Parson explained that Plaintiff had stopped taking her antidepressant at that time because her dog "chewed up her prescription for her ADHD medication and [Plaintiff] reasoned that if she wa[s not] taking both medications, there was no point to take only the one." (Doc. 8-7, PageID 419.) Ms. Parson explained that Plaintiff was "emotionally immature, ma[de] impulsive decisions, and use[d] poor judgment," and further noted that Plaintiff's poor judgment resulted in "taking significant risks and some of these have had the potential of causing her physical harm." (*Id.*) Ms. Parson also stated that Plaintiff had "frequent memory problems and at times irrational thinking." (Doc. 8-8, PageID 582.)

SSR 16-3p recognizes that an individual's mental impairments and limitations may prevent an individual from understanding the need for consistent treatment, or may affect the individual's judgment to the point she is unaware she has a disorder which requires treatment. 2017 WL 5180304 at *10. In those circumstances, the ALJ should not rely on a claimant's treatment history to draw an adverse inference about the severity of his or her symptoms. The ALJ did not acknowledge, much less address, Plaintiff's or Ms. Parson's explanations for medication noncompliance in his evaluation of symptom severity. (Doc. 8-2, PageID 56.) Thus, the ALJ did not comply with SSR 16-3p.

For all of these reasons, the ALJ's evaluation of Ms. Parson's opinions fails to comply with the applicable legal framework and is unsupported by substantial evidence.

## VI.     CONCLUSION

Under Sentence Four of 42 U.S.C. § 405(g), the Court has authority to affirm, modify, or reverse the Commissioner's decision "with or without remanding the cause for rehearing." *Melkonyan v. Sullivan*, 501 U.S. 89, 99 (1991). Consequently, a remand under Sentence Four may result in the need for further proceedings or an immediate award of benefits. *E.g., Blakley*, 581 F.3d at 410; *Felisky v. Bowen*, 35 F.3d 1027, 1041 (6th Cir. 1994). The latter is warranted where the evidence of disability is overwhelming or where the evidence of disability is strong while contrary evidence is lacking. *Faucher v. Sec'y of Health & Human Servs.*, 17 F.3d 171, 176 (6th Cir. 1994).

A judicial award of benefits is unwarranted in the present case because the evidence of disability is neither overwhelming nor strong while contrary evidence is lacking. *Faucher*, 17 F.3d at 176. However, Plaintiff is entitled to an Order remanding this case to the Social Security Administration pursuant to Sentence Four of Section 405(g) for the reasons stated above. On remand, the ALJ should further develop the record as necessary, particularly as to the opinion of Joyce Parson, M.S.W./L.I.S.W.-S., and evaluate the evidence of record under the applicable legal criteria mandated by the Commissioner's regulations and rulings and governing case law. The ALJ should evaluate Plaintiff's disability claim under the required five-step sequential analysis to determine anew whether Plaintiff was under a disability and whether her applications for Child's Insurance Benefits and Supplemental Security Income should be granted.

**IT IS THEREFORE ORDERED THAT**:

1.  Plaintiff's Statement of Errors (Doc. 11) is GRANTED;

2.  The Court REVERSES the Commissioner's non-disability determination;

3.  No finding is made as to whether Plaintiff was under a "disability" within the meaning of the Social Security Act;

4.  This matter is REMANDED to the Social Security Administration under Sentence Four of 42 U.S.C. § 405(g) for further consideration consistent with this Decision and Order; and

5.  This case is terminated on the Court's docket.


                */s/ Caroline H. Gentry*
                Caroline H. Gentry
                United States Magistrate Judge